UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DION CARTER,<br><br>      *Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, and JAMES VAUGHN, DANA FRIEND, HERBERT ROUSON, and CHERYL BAILEY, individuals,<br><br>      *Defendants*. | 22-cv-1681 (DLF) |

**DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS
PLAINTIFF CARTER'S AMENDED COMPLAINT**

Defendant District of Columbia (the District) moves to dismiss Plaintiff Dion Carter's Amended Complaint under Fed. R. Civ. P. 12(b). Carter fails to plead a viable constitutional claim under 42 U.S.C. § 1983 against the District.

A memorandum of points and authorities detailing the basis for this motion is attached.

A proposed Order is also attached.

Date: October 7, 2022

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ *Patricia A. Oxendine*
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I

        s/ *Nicole Marimon*
        NICOLE MARIMON[1]
        Assistant Attorney General
        Office of the Attorney General
        Civil Litigation Division, Section I
        400 6th Street, NW
        Washington, D.C. 20001
        Phone: (202) 724-7316; (202) 705-1213 (direct)
        Email: nicole.marimon@dc.gov

        *Counsel for Defendant District of Columbia*

---

[1] Admitted to practice only in the State of New York. Practicing in the District of Columbia under the direct supervision of Patricia A. Oxendine, a member of the D.C. Bar, pursuant to D.C. Court of Appeals Rule 49(c)(4).

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DION CARTER,<br><br>   *Plaintiff*,<br><br> v.<br><br>DISTRICT OF COLUMBIA, and JAMES VAUGHN, DANA FRIEND, HERBERT ROUSON, AND CHERYL BAILEY, individuals,<br><br>   *Defendants*. | 22-cv-1681 (DLF) |

**DEFENDANT DISTRICT OF COLUMBIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF CARTER'S AMENDED COMPLAINT**

Defendant District of Columbia (the District) submits this memorandum of points and authorities in support of its requested relief.

**INTRODUCTION**

Plaintiff Dion Carter's (Carter) suit against the District cannot be maintained because he failed to plead facts to support municipal liability against this defendant under 42 U.S.C. § 1983.

**FACTS**

By Order, dated September 30, 2022, this Court granted Carter's motion for leave to amend his complaint. *See* 9/30/2022 Minute Order. Carter sues the District, Dr. Cheryl Bailey, James Vaughn, Dana Friend, and Herbert Rouson for alleged constitutional violations. *See* Am. Compl. He asserts the following causes of action against these defendants under 42 U.S.C. § 1983: Count I – discrimination by Court managers based on sexual orientation and gender identity and expression in violation of the federal Constitution; Count II – hostile work

environment created by Court managers based on sexual orientation and gender identity and expression in violation of the federal Constitution; Count III – retaliation by Court managers for protected opposition activity; and Court IV – liability of the D.C. Courts as an agency under *Monell*. *Id.*

Carter alleges he is an African American and transgender male who was hired by the D.C. Courts as a Building Maintenance Engineer (BME) in January 2010. *See* Am. Compl. at ¶¶ 2, 15. Carter asserts that at the time of hire, he identified as a woman and alleges she was the only female at the D.C. Courts who held the position of BME. *Id.* ¶ 17. Carter alleges that while employed by the D.C. Courts, supervisors, including James Vaughn, Dana Friend, Herbert Rouson, and Dr. Cheryl Bailey, as acting D.C. Court system executive director, discriminated against him based on his gender identity and expression and sexual orientation, suspended him and ultimately fired him on June 13, 2019 in retaliation for opposing such discrimination. *Id.* at ¶¶ 44, 50-52, 55, 64, 69-71, 7-78, 81, 88-91, 96, 106-107, 114, 151, 153-154.

Carter asserts that in March 2018, he was deemed absent without leave. *Id.* at 85. According to Carter, he visited Dr. Bailey to complain that he had been unjustly deemed AWOL. *Id.* at ¶¶ 88-89. Allegedly, during that visit, Dr. Bailey "almost immediately changed the subject from the AWOL matter, said she was "a licensed therapist," and asked if she could ask him "a few questions." *Id.* "She then inquired briefly about the hormone treatments [he] was receiving for his transition, and then opined that because he was taking testosterone he was having 'outbursts' and exhibiting 'uncontrollable behavior.'" *Id.* Carter avers that Dr. Bailey's conduct was discriminatory against him based on his sexual orientation and gender identity and expression. *Id.* at ¶ 90. Carter alleges that he had a conversation with Friend (date unidentified) who "parroted almost verbatim" Dr. Bailey's alleged comments about "outbursts" and

2

"uncontrollable behavior." *Id.* at ¶ 96.  Carter asserts that based on Friend's comments, "[i]t was obvious . . . [that Dr. Bailey] has transmitted her false presumptions, based on bigotry and not science, to Mr. Friend as if she were the authority on the subject."  *Id.* at ¶ 97.  Carter also alleges that Friend sent an email on April 25, 2018 to him notifying him of a two-day suspension and advising that he could not return to work until he met with an employee assistance counselor at the U.S. Department of Health and Human Services.  *Id.* at ¶ 106.  Carter alleges that Friend stated, "[i]t is my sincere hope that this formal referral to EAP provides you with support and direction that will assist you in addressing any issues that may impact your continued employment with the Courts."  *Id.*  Carter contends that the order to see a counselor was "the direct product of Mr. Vaughn's, Mr. Allen's, Mr. Friend's, and above all Dr. Bailey's desire to depict Mr. Carter as mentally unstable, and to pretend and insinuate that his gender transition was either the cause of this supposed instability, its principal symptom, or both."  *Id.* at ¶ 112.  Carter alleges that based on this "false and scurrilous pretext" he was terminated, upon the recommendation of Vaugh, Friend, and Rouson, and with Dr. Bailey's alleged approval, in violation of his constitutional rights.  *Id.* at ¶¶ 151-152. Carter concludes that Dr. Bailey was a final decisionmaker in personnel matters and thus her statements became D.C. Court policy.  *Id.* at ¶¶ 107, 206.

Given the allegations raised in the amended complaint, the District now moves to dismiss Carter's amended complaint with prejudice.

## LEGAL STANDARD

A dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper if the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). The determination of whether a dismissal is proper is made on the face of the pleadings alone.

3

*See Telecomms. of Key West, Inc. v. United States*, 757 F.2d 1330, 1335 (D.C. Cir. 1985). A plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 559 U.S. 544, 570 (2007). A complaint, therefore, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" in order to survive a Rule 12(b)(6) motion to dismiss. *Id.* at 555.

To survive a motion to dismiss filed under Rule 12(b)(6), a complaint must contain sufficient facts, accepted as true, to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, the Court must accept as true all of the factual allegations contained in the complaint, but not the legal conclusions. *Id.* In addition, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. The Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in a complaint. *Id.* A claim is facially plausible when the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While plausibility does not equate to the "probability requirement, [a plaintiff must show] more than a sheer possibility that a defendant acted unlawfully. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

### I. Carter's Municipal Liability Claims Fail Under Counts I, II, and III.

Municipal liability under 42 U.S.C.§ 1983 is severely limited and does not allow for *respondeat superior* liability. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, to the extent Carter seeks to hold the District directly liable for the alleged unconstitutional conduct of Dr. Bailey, Friend, Vaughn, or Rouson under Counts I, II, and III, those direct liability claims fail under § 1983. *Id.* at 694 (A local government may not be sued

under § 1983 for an injury inflicted solely by its employees or agents.).  Rather, it is when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible under § 1983." *Id.*  Even for an employment discrimination claim under § 1983 against a municipal defendant, the plaintiff must show the violation of his constitutional rights resulted from a municipal policy or custom.  *See Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990) (Employment discrimination against a municipality under § 1983 requires a showing that the violation of the plaintiff's constitutional rights resulted from a municipal policy or custom.)

    The Supreme Court has instructed that "at the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824 (1985).  Stated otherwise, the municipal policy, practice, or custom must be the "moving force" behind the alleged constitutional injury.  *See Monell,* 436 U.S. at 658.  Indeed, a § 1983 plaintiff must identify a municipal policy, custom, or practice that caused the plaintiff's alleged constitutional injury.  *See Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).  *See also Bush v. District of Columbia*, 595 F.3d 384, 386 (D.C. Cir. 2010).

    For the purposes of a municipal liability claim, causation may be shown if the defendant municipality explicitly enacted or implemented a deficient policy or practice or was deliberately indifferent to a risk that not addressing a particular need would result in constitutional violations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004).  A plaintiff pleading deliberate indifference for purposes of municipal liability must put forth factual allegations suggesting that the defendant municipality knew or should have known of any deficiency in its policies or practices that allegedly caused a constitutional deprivation.  *See Robertson v. District of*

*Columbia,* 2010 U.S. Dist. LEXIS 84170, at *21–23 (D.D.C. 2010) (dismissing municipal liability claim where complaint merely alleged instance of misconduct, inadequate training, and "deliberate indifference" without facts suggesting defendant knew or should have known of deficient training or other policies or practices). *See also Ibrahim v. District of Columbia*, 357 F. Supp. 2d 187, 195–96 (D.D.C. 2004) (dismissing the plaintiff's § 1983 claim against the District under Rule 12(b)(6) because the plaintiff failed to allege that District officials knew or should have known of the risk that his constitutional rights would be violated).

Here, Carter has pointed to no District custom, practice or policy which he asserts led to the violation of his constitutional rights. *See* Am. Compl. Rather, as the basis for municipal liability, Carter only relies on Dr. Bailey's alleged inquiry about the medical procedure he underwent and that she expressed belief that the medicine he took was negatively affecting him. *See* Am. Compl. at ¶¶ 88-91. Carter contends, "on information and belief," that Dr. Bailey's presumptions regarding gender transitions were conveyed to others within the D.C Court, specifically Friend, such that those opinions qualified as the D.C. Courts' adopted policy. *Id.* at ¶ 98. But Carter's reliance on what Dr. Bailey said which he avers was parroted by Friend is misplaced. *See* Am. Compl. at ¶¶ 96, 98, 101. According to Carter, "it was obvious" to *him* that the source of Friend's statements was Dr. Bailey. *Id.* at ¶¶ 97-98 (emphasis added). But there are no facts showing that Dr. Bailey conveyed her statements to Friend, or that anyone else within the D.C. Court was aware of Dr. Bailey's statements such that they were adopted as a policy within the D.C. Court and were the driving force behind Carter's termination. *See* Am. Compl. Even if Dr. Bailey conveyed the statements she shared with Carter to Friend, there is no showing that her statements set "policy." *Id.* at ¶ 98. The statements as described by Carter did not direct him to do anything and did not direct anyone else to do anything. Rather, according to

6

Carter, Dr. Bailey attributed Carter's behavior to medication he was taking, not to his sexual orientation. *Id.* Because none of the actions identified by Carter in his amended complaint show the existence of an unconstitutional District custom, practice or policy or that the "asserted" policy caused the violation of Carter's constitutional rights, his municipal liability claims against this defendant cannot be maintained.

Carter's allegation that Dr. Bailey is a *final* policymaker is unfounded and not supported by the complaint allegations. *See* Am. Compl. at ¶ 169. And even if Dr. Bailey was a final policymaker, Carter must show Dr. Bailey set policy or adopted policy which caused him harm. Notably, "[m]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (citing *City of Oklahoma City*, 471 U.S. at 823) ("'policy' generally implies a course of action consciously chosen from among various alternatives")). In *Pembaur*, the Supreme Court explained that "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Pembaur,* 475 U.S. at 480. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 482. Moreover, "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id. See also Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992) (finding that in order to have final policymaking authority, an official must possess "responsibility for making law or setting policy," that is, "authority to adopt rules for the conduct of government"); *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (city manager was not a final

7

policymaker when his position was executive rather than legislative and state law did not give him "the responsibility for making law or setting policy"); *Rasche v. Village of Beecher*, 336 F.3d 588, 600 (7th Cir. 2003) (official who had authority to issue tickets and citations but did not "set the zoning policy or enact the zoning ordinance" was not final policymaker with regard to zoning); *Jett v. Dallas Independent School District*, 7 F.3d 1241, 1249-50 (5th Cir. 1993) (superintendent of a school district was not a final policymaker because he was merely interpreting and applying the written policies of the school district's board of trustees, and was doing so erroneously).

Here, Carter's conclusion that the statements made by Dr. Bailey constituted District policy should be rejected. Nothing in the asserted statement shows policy was set or if one was set what policy was set. Am. Compl. *First,* Carter has not pleaded facts that show that Dr. Bailey made policy that affected him or that she made any policy related to his sexual orientation. *See* Am. Compl. While Carter was placed on AWOL and suspended, there are no facts identified showing that Dr. Bailey played any role in these decisions. Am. Compl ¶¶ 84-85, 99, 106. Nor has Carter shown that Dr. Bailey was responsible for his termination or that she otherwise weighed in on the termination decision. Indeed, by Carter's own admission the recommendation to terminate Carter originated with Vaughn and was approved by Rouson. *See* Am. Compl. at ¶ 151. And his allegation "on information and belief" that Rouson's approval of Carter's termination was in turn approved by Dr. Bailey is unsupported by any factual allegation in the Amended Complaint. *Id.* at ¶ 152. *Second,* Carter pleaded no facts showing that Dr. Bailey expressed any negative opinions to his supervisors *before* they allegedly violated his constitutional rights. Thus, he cannot show that her opinions were the moving force behind the violation of his constitutional rights. *See id.* at ¶¶ 141-152. *Third*, Carter has pleaded no facts

8

showing that any named supervisor identified in his amended complaint overheard his discussion with Dr. Bailey such that her comment influenced their actions. Nor is Carter's reference to his conversation with Friend, at which Carter contends Friend parroted Dr. Bailey's statements, sufficient to plausibly infer that Dr. Bailey's comments were overheard by Friend and that he took actions against Carter based on those comments. *Id.* at ¶ 96. *Fourth,* Carter has alleged no facts that show the opinions offered by Dr. Bailey to him focused on or were otherwise related to his sexual orientation. Rather, according to Carter, they were about his behavior which she attributed to the medication he was taking. *Id.* at ¶ 88. *Fifth,* Carter has raised no facts showing that Dr. Bailey's opinions were the moving force behind the asserted unconstitutional conduct by his supervisors. In fact, based on the allegations as pleaded, Carter's managers were allegedly discriminating against him *before* he had any conversation with Dr. Bailey about his alleged wrongful placement on AWOL. *See* Am. Compl. at ¶¶ 44, 50-52, 55, 64, 69-71, 7-78, 81. *Finally,* Carter had pleaded no facts showing that Dr. Bailey acted with deliberate indifference to the known violation of his constitutional rights by his managers or that she adopted the unconstitutional misconduct. Indeed, outside of the AWOL matter Carter attempted to discuss with Dr. Bailey, he does not set forth any factual allegations that Dr. Bailey knew about his managers' alleged unconstitutional conduct. And, Carter's remaining allegations about Dr. Bailey's knowledge or approval of such misconduct are conclusory and as he asserts are "on information and belief." *Id.* at ¶¶ 107, 152, 168. *See also* Andrews, 895 F.2d. at 1481 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 142 (1988) (The question of who is a "policymaker" is a question of state law)). *See also Singletary v. District of Columbia,* 766 F.3d 66, 74 (D.C. Cir. 2014). In *Singletary,* the plaintiff served a lengthy jail sentence because his parole was revoked by the Board of Parole (the Board). At the trial level, the court reasoned that

9

the District bore municipal liability for the "unconstitutional" decision by the Board to revoke the plaintiff's parole based on unreliable evidence. On appeal, the Circuit recognized that the Board had authority to make final revocation decisions in individual cases under D.C. Code § 24-201.2(a)(4). But it reversed the trial court's decision of municipal liability for the Board's action finding that the Board "was 'constrained by policies not of [its] making,' and its decision to 'depart[]' from those policies by revoking Singletary's parole based on unreliable hearsay was not an 'act of the municipality' for purposes of § 1983." *Id.* (citing *Praprotnik*, 485 U.S. at 127). *See also Bietevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews*, 985 F.2d at 1480 , quoting *Pembaur,* 475 U.S. at 481 ("Policy is made when a 'decisionmaker possess [ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.")). Thus, because Carter has not shown that:  1) Dr. Bailey was a final policymaker or 2) she instituted an official proclamation, policy or edict based on her comments or actions, Carter's municipal liability claims under 1983 fails against the District as a matter of law.

## II.      Carter's Asserted Claim Against the DC Courts (Count IV) Is Not Actionable.

While Carter did not name the D.C. Courts as a defendant in this action, as Count IV, he asserts liability of the D.C. Courts as an agency under *Monell*. *See* Am. Compl. ¶¶ 204-212. Carter cannot maintain this claim against the D.C. Courts because it is non sui juris. *See Kundrat v. District of Columbia,* 106 F. Supp. 2d 1, 8 (D.D.C. 2000) ("neither the D.C. Superior Court nor the Joint Committee is suable *eo nomine*" ). And given that the District is already a party defendant, and Carter has not alleged sufficient facts to support municipal liability against it, Count IV fails as a matter of law.

### III.    The Statute of Limitations Bars Carter's Claims that Predate June 12, 2019.

The statute of limitations for a § 1983 claim is governed by the general three-year statute of limitations imposed by District of Columbia law.  *See Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 457 (D.D.C. 2014).  *See also* D.C. Code § 12-301(5).  As recognized by Carter, this lawsuit was filed within three years of his June 13, 2019 termination.  Am. Compl. ¶ 11.  *See also* Compl. [1].  But Carter's suit was not filed within three years of the other alleged misconduct for which he seeks relief from this defendant, including those arising under his hostile work environment claims (Count III).  Indeed, Carter raises claims beginning in 2016, arising in 2017, and asserts that he was deemed absent without leave in mid-March 2018 and thereafter suspended for two days in April 2018.  *See* Am. Compl. ¶¶ 35, 36, 55, 60-62, 68, 77, 84-85, 98, 103, 106, 114.  Because Carter's hostile work environment claims and other actions arising before June 12, 2019 are barred, these claims should be dismissed.

### CONCLUSION

For these reasons, Carter's amended complaint against the District should be dismissed with prejudice.

Date: October 7, 2022                               Respectfully submitted,

                                            KARL A. RACINE
                                            Attorney General for the District of Columbia

                                            CHAD COPELAND
                                            Deputy Attorney General
                                            Civil Litigation Division


                                            */s/ Patricia A. Oxendine*
                                            PATRICIA A. OXENDINE
                                            D.C. Bar No. 428132
                                            Chief, Civil Litigation Division, Section I

s/ *Nicole Marimon*
NICOLE MARIMON[2]
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division, Section I
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 724-7316; (202) 705-1213 (direct)
Email: nicole.marimon@dc.gov

*Counsel for Defendant District of Columbia*

---

[2]   Admitted to practice only in the State of New York.  Practicing in the District of Columbia under the direct supervision of Patricia A. Oxendine, a member of the D.C. Bar, pursuant to D.C. Court of Appeals Rule 49(c)(4).

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| DION CARTER,<br><br>    *Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>    *Defendant*. | 22-cv-1681 (DLF) |

**ORDER**

Upon consideration of Defendant District of Columbia's Motion to Dismiss Plaintiff Dion Carter's Amended Complaint, any Opposition, the District's Reply, and the record, it is this ____ day of _____, 2022,

**ORDERED:** that the motion is granted for the reasons identified by the District in its motion; and it is,

**FURTHER ORDERED:** that this lawsuit against the District is dismissed with prejudice; and it is,

**SO ORDERED.**

_____
Judge Dabney L. Friedrich
U.S. District Court for the District of Columbia