UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DION CARTER,<br><br>        *Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, and JAMES VAUGHN, DANA FRIEND, HERBERT ROUSON, and CHERYL BAILEY, individuals,<br><br>        *Defendants*. | 22-cv-1681 (DLF) |

**DEFENDANTS CHERYL BAILEY, DANA FRIEND, AND HERBERT ROUSON'S MOTION TO DISMISS PLAINTIFF CARTER'S AMENDED COMPLAINT**

    Defendants Cheryl Bailey, Dana Friend, and Herbert Rouson move to dismiss Plaintiff Dion Carter's Amended Complaint under Fed. R. Civ. P. 12(b).  Carter's claims are barred by the applicable statute of limitations.  And the defendants are entitled to qualified immunity.

    A memorandum of points and authorities detailing the basis for this motion is attached. A proposed Order is also attached.

Date: October 31, 2022

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ *Patricia A. Oxendine*
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Section I

                      s/ *Nicole Marimon*
                      NICOLE MARIMON
                      D.C. Bar No. 90001966
                      Assistant Attorney General
                      Office of the Attorney General
                      Civil Litigation Division, Section I
                      400 6th Street, NW
                      Washington, D.C. 20001
                      Phone: (202) 724-7316; (202) 705-1213 (direct)
                      Email: nicole.marimon@dc.gov

                      *Counsel for Defendants Cheryl Bailey, Dana Friend, and Herbert Rouson*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DION CARTER,

      *Plaintiff*,

v.

DISTRICT OF COLUMBIA, and JAMES VAUGHN, DANA FRIEND, HERBERT ROUSON, AND CHERYL BAILEY, individuals,

      *Defendants*.

22-cv-1681 (DLF)

**DEFENDANTS CHERYL BAILEY, DANA FRIEND, AND HERBERT ROUSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF CARTER'S AMENDED COMPLAINT**

Defendants Cheryl Bailey, Dana Friend, and Herbert Rouson submit this memorandum of points and authorities in support of its requested relief.

### INTRODUCTION

Plaintiff Dion Carter's (Carter) suit against these defendants cannot be maintained because his claims are barred by the applicable statute of limitations. And these defendants are entitled to qualified immunity.

### FACTS

By Order, dated September 30, 2022, this Court granted Carter's motion for leave to amend his complaint. *See* 9/30/2022 Minute Order. Carter sues the District, Dr. Cheryl Bailey, James Vaughn, Dana Friend, and Herbert Rouson for alleged constitutional violations. *See* Am. Compl. He asserts the following causes of action against these defendants under 42 U.S.C. § 1983: Count I – discrimination by Court managers based on sexual orientation and gender

identity and expression in violation of the federal Constitution; Count II – hostile work environment created by Court managers based on sexual orientation and gender identity and expression in violation of the federal Constitution; and Count III – retaliation by Court managers for protected opposition activity.  *Id.*

Carter alleges he is an African American and transgender male who was hired by the D.C. Courts as a Building Maintenance Engineer (BME) in January 2010.  *See* Am. Compl. at ¶¶ 2, 15.  Carter asserts that at the time of hire, he identified as a woman and alleges she was the only female at the D.C. Courts who held the position of BME.  *Id.* ¶ 17.  Carter alleges that while employed by the D.C. Courts, supervisors, including James Vaughn, Dana Friend, Herbert Rouson, and Dr. Cheryl Bailey, as acting D.C. Court system executive director, discriminated against him based on his gender identity and expression and sexual orientation, suspended him and ultimately fired him on June 13, 2019 in retaliation for opposing such discrimination.  *Id.* at ¶¶ 44, 50-52, 55, 64, 69-71, 7-78, 81, 88-91, 96, 106-107, 114, 151, 153-154.

Carter asserts that in March 2018, he was deemed absent without leave.  *Id.* at ¶ 85.  According to Carter, he visited Dr. Bailey to complain that he had been unjustly deemed AWOL.  *Id.* at ¶¶ 88-89.  Allegedly, during that visit, Dr. Bailey "almost immediately changed the subject from the AWOL matter, said she was "a licensed therapist," and asked if she could ask him "a few questions."  *Id.*  "She then inquired briefly about the hormone treatments [he] was receiving for his transition, and then opined that because he was taking testosterone he was having 'outbursts' and exhibiting 'uncontrollable behavior.'"  *Id.*  Carter avers that Dr. Bailey's conduct was discriminatory against him based on his sexual orientation and gender identity and expression.  *Id.* at ¶ 90.  Following his meeting with Dr. Bailey, Carter alleges that he met with Friend to discuss a two-day suspension in March 2018.  *Id.*  ¶ 95.  During the meeting, Friend

allegedly asked if Carter was "OK," asked if Carter wished to admit something, advised him of the two-day suspension, advised that Carter was being given the rest of the day off, and stated "You want your bacon back, right?" *Id.* ¶¶ 94-101. Carter also alleges that he had a conversation with Friend (date unidentified) who "parroted almost verbatim" Dr. Bailey's alleged comments about "outbursts" and "uncontrollable behavior." *Id.* at ¶ 96. Carter asserts that based on Friend's comments, "[i]t was obvious . . . [that Dr. Bailey] has transmitted her false presumptions, based on bigotry and not science, to Mr. Friend as if she were the authority on the subject." *Id.* at ¶ 97. Carter contends that Friend's conduct was discriminatory. *Id.* ¶ 101. And Carter also alleges that Friend sent an email on April 25, 2018 to him notifying him of a two-day suspension and advising that he could not return to work until he met with an employee assistance counselor at the U.S. Department of Health and Human Services. *Id.* at ¶ 106. Carter alleges that Friend stated, "[i]t is my sincere hope that this formal referral to EAP provides you with support and direction that will assist you in addressing any issues that may impact your continued employment with the Courts." *Id.* Carter contends that the order to see a counselor was "the direct product of Mr. Vaughn's, Mr. Allen's, Mr. Friend's, and above all Dr. Bailey's desire to depict Mr. Carter as mentally unstable, and to pretend and insinuate that his gender transition was either the cause of this supposed instability, its principal symptom, or both." *Id.* at ¶ 112. Carter alleges that based on this "false and scurrilous pretext" he was terminated, upon the recommendation of Vaughn, Friend, and Rouson, and with Dr. Bailey's alleged approval, in violation of his constitutional rights. *Id.* at ¶¶ 151, 152.

Given the allegations raised in the amended complaint, the defendants now move to dismiss Carter's amended complaint against them with prejudice.

**LEGAL STANDARD**

A dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The determination of whether a dismissal is proper is made on the face of the pleadings alone. *See Telecomms. of Key West, Inc. v. United States*, 757 F.2d 1330, 1335 (D.C. Cir. 1985). A plaintiff is required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 559 U.S. 544, 570 (2007). A complaint, therefore, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" in order to survive a Rule 12(b)(6) motion to dismiss. *Id.* at 555.

**ARGUMENT**

**I.      Carter's Claims Against the Defendants are Time Barred.**

The statute of limitations for a § 1983 claim is governed by the general three-year statute of limitations imposed by District of Columbia law. *See Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 457 (D.D.C. 2014). *See also* D.C. Code § 12-301(8). Here, Carter did not file this lawsuit until June 12, 2022, and did not seek leave to add these defendants as parties until August 26, 2022. *See* Compl. [1]; Pl.'s Mot. to Amend [9]. Yet, Carter's asserted claims begin in 2016, continue in 2017 and 2018, and end with his termination on June 13, 2019. *See* Am. Compl. ¶¶ 35, 36, 55, 60-62, 68, 77, 84-85, 98, 103, 106, 114. Thus, because these claims against these defendants were not raised until August 26, 2022, each is barred by the three-year statute of limitations. *See* D.C. Code § 12-301(8).

While equitable tolling can extend the statute of limitations, there is no basis to find that Carter's claims against these defendants were equitably tolled or that they relate back to the commencement of this action on June 12, 2022. *See Proctor*, 74 F. Supp. 3d at 458 (dismissing

4

plaintiff's discrimination claims where complaint was filed over three years after she was terminated, and plaintiff failed to present extraordinary circumstances justifying equitable tolling). *See also Norman v. United States*, 467 F.3d 773, 775 (D.C. Cir. 2006) (noting equitable tolling is extended "only sparingly" and "generally denied [] where a plaintiff 'failed to exercise due diligence in preserving his legal rights' or showed only 'a garden variety claim of excusable neglect.'") (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 93–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). Indeed, Carter had an opportunity to assert these claims against these defendants as part of his original complaint filed on June 20, 2020 in the Superior Court for the District of Columbia and again on June 12, 2022 before this Court but chose not to do so. *See* Compl. titled *Carter v. District of Columbia,* Ex. A; Compl. [1]. Thus, Carter's claims do not relate back to date of the June 12, 2022 original complaint filed in this Court.

And Fed R. Civ. P. 15(c)(1) does not support relation back here. This Rule provides that an amendment bringing in a party to an action relates back to the date of the original pleading when:

> …(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i)  received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii)  knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Here, Carter cannot satisfy each factor under Rule 15(c)(1)(C). *First,* Carter never served these defendants with the Amended Complaint or filed proof of service. *See* Ct. Dkt. *Second,* Carter cannot show that these defendants knew or should have known that this action would be brought against them especially since he raises allegations back to 2016 up to 2019. In a similar context,

5

in *Philogene v District of Columbia*, the court found claims against an individual defendant who was not named in the original complaint did not relate back to the original complaint, despite being identified in the factual allegations. *Philogene*, 864 F. Supp. 2d 127, 134 (D.D.C. 2012), aff'd, No. 12-7057, 2012 WL 6608966 (D.C. Cir. Dec. 10, 2012). Notably in *Philogene*, the court did not find that individual defendant had constructive notice despite both parties being represented by the Office of the Attorney General. *Id.*; *see also Woods v. District of Columbia*, No. CV 20-0782 (CKK), 2022 WL 834144, at *4 (D.D.C. Mar. 21, 2022) (noting that no court in this jurisdiction has had occasion to apply constructive notice through shared counsel). *Cf. Smith v. City of Philadelphia*, 363 F. Supp. 2d 795, 800 (E.D. Pa. 2005) (finding evidence of communications between attorney and individual clients for purposes of identifying John and Jane Doe defendants gave notice to defendants of the action). Here, this case is distinguished from *Smith*. Unlike the *Smith* plaintiff, Carter named no John or Jane Doe defendants. *See* Ex. A; Compl. [1]. Nor is this a case of mistaken identity. *Id.* Rather, Carter made a conscious decision not to name these defendants as parties earlier in this lawsuit. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 552, 130 S. Ct. 2485, 2496, 177 L. Ed. 2d 48 (2010) ("When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met."). Carter's proposed amended complaint is his fourth iteration of his complaint–two in the D.C. Superior Court and two here–all of which include references to the individual defendants. And yet, in none of the three prior filings did Carter undertake to make claims against any of these defendants. Rather, Carter repeatedly asserted claims against the District, changing only the legal theory under which he was proceeding. *Cf.* Ex. A; 11/03/2020

Am. Compl., Ex. B; 6/12/22 Compl. [1]; 9/30/22 Am. Compl. [14]. Having failed to name these defendants *before* the expiration of the applicable statute of limitations, Carter's claims against these defendants are now barred.

## II.     **Defendants Are Entitled to Qualified Immunity.**

Defendants are entitled to qualified immunity arising from Carter's asserted claims under Counts I, II, and III. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson*, 555 U.S. at 231. "The protection of qualified immunity applies regardless of whether the government official's error is a 'mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978) (qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and … is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Courts have "repeatedly… stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

The trial court has the discretion to determine which prong of the qualified immunity analysis to decide first. *Ashcroft v. al-Kidd*, 563 U.S. 731, 734, 131 S. Ct. 2074, 2078, 179 L.

Ed. 2d 1149 (2011). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202; *see also Johnson v. District of Columbia*, 381 U.S. App. D.C. 351, 528 F.3d 969, 976 (D.C. Cir. 2008) (noting that although reasonableness might be a factor in both steps, the second step focuses solely on whether it was reasonable for the government official to not know their conduct was unlawful). In *Tahlequah v. Bond*, 595 U.S. __ (2021) (per curiam), the Supreme Court reversed a denial of qualified immunity and clarified what constitutes "clearly established" for purposes of the doctrine. The court states, "[w]e have repeatedly told courts not to define clearly established law at too high a level of generality. . . . It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Tahlequah*, slip op. at 3. (citations and quotations omitted). Similarly, in *Rivas-Villegas v. Cortesluna*, 595 U.S. __ (2021) (per curiam), the Supreme Court reversed another denial of qualified immunity, again cautioning courts against defining a clearly established right at too high level of generality. The court stated, "to show a violation of clearly established law, Cortesluna must identify a case that put Rivas-Villegas on notice that his specific conduct was unlawful." *Rivas-Villegas*, slip op. at 5.

Here, Carter's allegations fail to show that defendants' actions constituted a violation of his clearly established constitutional rights under Counts I, II or III. *First*, the allegations against Dr. Bailey mainly relate to conduct allegedly committed by her subordinates. *See* Am. Compl. ¶¶ 9,15-168. But "officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009). The only specific allegations Carter alleges about

8

Dr. Bailey is that when he went to complain that he had been unjustly deemed AWOL, she asked if she could ask him some questions, and "inquired briefly about the hormone treatments [he] was receiving for his transition, and then opined that because he was taking testosterone he was having 'outbursts' and exhibiting 'uncontrollable behavior.'" *See* Am. Compl. at ¶¶ 88, 89. These allegations are not enough to hold Dr. Bailey liable for violating Carter's constitutional rights. Indeed, no reasonable official would believe it unlawful to ask the employee for permission to ask questions and when an opinion is given that neither discusses the employee's sexual orientation, that the employee's constitutional rights were violated. Nor has Carter identified any conduct by Dr. Bailey under Counts I, II, or III for which she is not protected by qualified immunity. *See* Am. Compl.

*Second,* Carter only alleges that Rouson approved his termination based on an "acceptance of Mr. Vaughn's fabricated 'reason' . . . and of Mr. Friend's adoption of that 'reason,' even though he knew, or should have known, that that 'reason' was false." *Id.* ¶¶ 8, 151, 167. But other than these conclusory allegations, Carter offers no facts to show that Rouson was aware of Carter's alleged discriminatory and hostile work environment or otherwise participated in creating or maintaining it. *Id.* Nor does he set forth any facts showing that Rouson knew Mr. Vaughn and Mr. Friend's reasons for recommending his termination was fabricated. *Id.* Or that any of his decisions violated Carter's constitutional rights. *See* Am. Compl. As such, based on this record, no reasonable official would believe that a decision to accept what they believed were justifiable reasons recommended for terminating an employee would violate that employee's constitutional rights. Similarly, because Carter has raised no allegations which negate Rouson's entitlement to qualified immunity under Counts I, II and III, judgment should be entered in his favor.

*Finally*, Carter's allegations that Friend acted on his "own motive to discriminate against [him]" when he and another D.C. Court employee met with him in March 2018 to discuss his two-day suspension does not support constitutional liability against Friend. *See* Am. Compl. ¶¶ 94-101. Indeed, Carter alleges no discriminatory conduct that occurred during the meeting. *Id.* In fact, Carter alleges that Friend asked him if he was "OK," asked if he wished to admit something, advised him of the two-day suspension, advised that he was being given the rest of the day off, and stated "You want your bacon back, right?" *Id.* And Carter also asserts that at this or another unidentified meeting, Friend parroted Dr. Bailey's comments about "outbursts" and "uncontrollable behavior." *Id.* ¶ 96. That Friend allegedly parroted someone else's comments that are not tied to Carter's sexual orientation or gender identity and are not indicative of discriminatory intent are not enough to support constitutional liability against this defendant. Nor is Carter's contention that Friend's April 25, 2018 email was discriminatory supported by his allegations. The email confirmed Carter's two-day suspension and directed him to meet with a counselor at the U.S. Department of Health and Human Services. *Id.* ¶ 106. Nor is Friend's reliance on a letter from Allen to support Carter's two-day suspension indicative of discriminatory conduct. *Id.* ¶¶ 139-140. Indeed, other than conclude that Friend should have known that the letter was "unworthy of belief and motivated by Mr. Allen's bias," Carter offers no facts to show Friend had reason to question the truthfulness of the letter. *Id.* ¶ 140. And Carter's allegation that Friend knowingly condoned Vaughn's discriminatory treatment of him and adopted Vaughn's fabricated reason for terminating him is similarly conclusory. *See* Am. Compl. ¶¶ 7, 130. Because Carter cannot show that a reasonable official faced with the same set of circumstances as Friend would believe his conduct to be unlawful, Friend is entitled to qualified immunity under Counts I, II and III.

Under the law, in order "[t]o defeat a defense of qualified immunity, a plaintiff must show not only [1] that an official 'violated a constitutional right,' but [2] also that 'the right was clearly established' at the time of the violation." *Fenwick v. Pudimott*, 778 F.3d 133, 137 (D.C. Cir. 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)). Carter has not met his burden and these defendants are entitled to qualified immunity. *See White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quotations and citation omitted) (Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.").

## CONCLUSION

For these reasons, Carter's amended complaint against these defendants should be dismissed with prejudice.

Date: October 31, 2022                              Respectfully submitted,

                                                      KARL A. RACINE
                                                    Attorney General for the District of Columbia

                                                    CHAD COPELAND
                                                    Deputy Attorney General
                                                    Civil Litigation Division


                                                    /s/ *Patricia A. Oxendine*
                                                    PATRICIA A. OXENDINE
                                                    D.C. Bar No. 428132
                                                    Chief, Civil Litigation Division, Section I

/s/ *Nicole Marimon*
NICOLE MARIMON
D.C. Bar No. 90001966
Assistant Attorney General
Office of the Attorney General
Civil Litigation Division, Section I
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 724-7316; (202) 705-1213 (direct)
Email: nicole.marimon@dc.gov

*Counsel for Defendants Cheryl Bailey, Dana Friend, and Herbert Rouson*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DION CARTER,<br><br>    *Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, and JAMES VAUGHN, DANA FRIEND, HERBERT ROUSON, and CHERYL BAILEY, individuals,<br><br>    *Defendants*. | 22-cv-1681 (DLF) |

# ORDER

Upon consideration of Defendants Cheryl Bailey, Dana Friend, and Herbert Rouson's Motion to Dismiss Plaintiff Dion Carter's Amended Complaint, any Opposition, the defendants' Reply, and the record, it is this _____ day of _____, 2022,

**ORDERED:**  that the motion is granted for the reasons identified by the defendants in their motion; and it is,

**FURTHER ORDERED:**  that this lawsuit against Dr. Cheryl Bailey, Dana Friend, and Herbert Rouson is dismissed with prejudice; and it is,

**SO ORDERED.**

_____
Judge Dabney L. Friedrich
U.S. District Court for the District of Columbia