UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| DION CARTER,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, and JAMES VAUGHN, DANA FRIEND, HERBERT ROUSON, and CHERYL BAILEY, *individuals*,<br><br>*Defendants.* | No. 1:22-cv-1681 (DLF) |

**MEMORANDUM OPINION**

Dion Carter brings this suit under 42 U.S.C. § 1983 against the District of Columbia and individual defendants James Vaughn, Dana Friend, Herbert Rouson, and Cheryl Bailey. Am. Compl. ¶ 1, Dkt. 14. Carter seeks a declaratory judgment that his termination from the District of Columbia Courts was the result of the defendants' discriminatory animus, as well as compensatory and punitive damages. *Id.*, Prayer for Relief ¶¶ 1–7. Before the Court is the District's motion to dismiss, Dkt. 15, and the individual defendants' motions to dismiss, Dkts. 16, 18. For the reasons that follow, the Court will grant those motions.

I. **BACKGROUND**

Carter was employed by D.C. Courts from January 2010 until his termination on June 13, 2019. Am. Compl. ¶¶ 2, 15. During that time, Carter, a transgender man, began his female-to-male transition and underwent "major sex-reassignment surgeries." *Id.* ¶¶ 2–3. Carter alleges that over the course of his employment he was subject to harassment and discrimination based on his sexual orientation and gender identity. *See, e.g., id.* ¶¶ 71, 78, 87, 163, 164. For example, Carter

alleges that his supervisor Emanuel Allen refused to assign him work, *id.* ¶¶ 18–19; denied him overtime, *id.* ¶¶ 36–38; made unmerited derogatory comments about his work, *e.g.*, *id.* ¶¶ 21, 26, 30–33, 56–59, 60–66; and denigrated him after his sex-reassignment surgeries, including by referring to him as "he-she," *e.g.*, *id.* ¶¶ 48–51, 55, 70, 74.  Carter further alleges that Vaughn, the chief building engineer, witnessed some of Allen's abuse and did nothing, *id.* ¶ 55, and further added to his discriminatory treatment, for instance, by placing "ridiculous conditions on him," *id.* ¶¶ 77–82; *see also id.* ¶¶ 84–86.

Carter brought Allen and Vaughn's "mistreatment" to the attention of Friend, the head of facilities, who did nothing.  *Id.* ¶ 67–68.  Later, Carter made an appointment with Bailey, executive officer of D.C. Courts, *id.* ¶ 9, to protest an incident in which Allen and Vaughn "unjustly deemed [him] [absent without leave]" from work when he had in fact been there assisting with an emergency.  *Id.* ¶¶ 85–86, 88.  But Bailey "refused to address" Carter's concerns, *id.* ¶ 89, and she instead asked him questions "about the hormone treatments [he] was receiving for his transition, and . . . opined that because he was taking testosterone he was having 'outbursts' and exhibiting 'uncontrollable behavior,'" *id.* ¶ 88.  Shortly after that meeting, Friend and another supervisor asked Carter to meet with them, and they "parroted" Bailey's sentiments about the testosterone treatments.  *Id.* ¶¶ 94–97.

On April 25, 2018, Friend notified Carter that he was suspended for two days from work.  *Id.* ¶ 106.  He further told Carter not to return to work until he had met with an employee assistance counselor, a condition that Carter alleges came from Bailey's belief that he "had mental problems" from his gender transition.  *Id.* ¶¶ 107, 112–113.

Carter alleges that the discriminatory treatment by Allen, Vaughn, and Friend continued after he returned to work.  *See, e.g.*, *id.* ¶¶ 118, 133–136.  For example, in one instance Vaughn

gave him orders that were "impossible . . . to carry out" because of authorization and timing constraints and then proposed suspending Carter for ten days for "insubordination" when he did not comply. *Id.* ¶¶ 120–128. Friend accepted Vaughn's version of events without question and recommended five days' suspension. *Id.* ¶¶ 129, 138. Finally, on April 6, 2019, Vaughn sent Carter home from work for consuming alcohol on the job and placed him on administrative leave. *Id.* ¶¶ 141–151. Vaughn wrote a memorandum detailing the incident and recommending Carter's termination; Friend upheld that recommendation in a memorandum to Rouson, D.C. Courts' deputy executive officer; and Rouson approved the recommendation. *Id.* Carter alleges that these memoranda all contained false statements. *Id.* ¶¶ 151, 156, 153–161. On June 13, 2019, Friend notified Carter that he was terminated. *Id.* ¶ 151.

On June 12, 2022, Carter filed suit in this Court against the District of Columbia. *See generally* Compl., Dkt. 1. He amended his complaint on September 30, 2022, to add Vaughn, Friend, Rouson, and Bailey as defendants. *See generally* Am. Compl. Carter brought three claims under § 1983 for violations of his federal constitutional rights: discrimination based on sexual orientation and gender identity and expression, *id.* ¶¶ 183–188; hostile work environment based on sexual orientation and gender identity and expression, *id.* ¶¶ 189–198; and retaliation for protected activity opposing his discrimination and abuse, *id.* ¶¶ 199–203. All defendants moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARDS

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible

claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quotation marks omitted). When deciding a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to or incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III. ANALYSIS

#### A. Res judicata (as to all defendants)

On May 17, 2023, the D.C. Superior Court dismissed an amended complaint that Carter filed in that court alleging discrimination under D.C. law for the same treatment and termination described above. *See* D.C. Superior Ct. Order at 8, Defs.' Notice of Filing Ex. A, Dkt. 23-1. The Superior Court's dismissal was based on Carter's failure to exhaust administrative remedies as required by D.C. law. *See id.* at 6–8. The defendants assert that the Superior Court dismissal precludes Carter from litigating this § 1983 claim arising from the same facts. Defs.' Notice of Filing at 1 n.1, Dkt. 23. The Court disagrees.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so[.]" *Id.* at 96 (citing 28 U.S.C. § 1738); *see also* 28 U.S.C. § 1738

4

(including also any "Territory or Possession").  D.C. claim preclusion law, in turn, places the "burden of persuasion" on the "defendant seeking dismissal of a complaint on res judicata grounds" for two issues: first, "that the prior decision on which he bases his res judicata claim was a decision on the merits," and second, "that the earlier litigation was based on the same cause of action."  *Shin v. Portals Confederation Corp.*, 728 A.2d 615, 618 (D.C. 1999) (quotation marks omitted).  Here, the defendants have failed to establish the first prong: that the D.C. Superior Court's decision was "on the merits."  *Id.*

There is substantial reason to doubt that D.C. law considers a dismissal for failure to exhaust administrative remedies "an adjudication on the merits" for claim preclusion purposes.  *See Crockett v. Mayor of D.C.*, 279 F. Supp. 3d 100, 108 (D.D.C. 2017) (concluding that it does not); *Clay v. Faison*, 583 A.2d 1388, 1391 (D.C. 1990) (providing a narrow conception of "on the merits" for claim preclusion purposes); *Bazata v. Nat'l Ins. Co. of Wash.*, 400 A.2d 313, 315 (D.C. 1979) (referencing case in which a "trial court['s] dismiss[al] for a failure to exhaust statutory grievance procedures . . . did not render a decision on the merits").  In most jurisdictions, including the District of Columbia, dismissal for "'a plaintiff's failure to comply with a precondition' to bringing suit" does not generally bar subsequent litigation.  *Crockett*, 279 F. Supp. 3d at 109 (quoting *Costello v. United States*, 365 U.S. 265, 285 (1961)); *Bazata*, 400 A.2d at 315 (same).  In this context, exhaustion of remedies is such a precondition, as it "pertains to the court's ability to hear an otherwise extant and arguably proper substantive claim for relief" rather than "to an element of that substantive claim."  *Bataza*, 400 A.2d at 315; *see also Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501–02 (2001) ("The original connotation of an 'on the merits' adjudication is one that actually passes directly on the substance a particular claim before the court." (quotation marks and alterations omitted)); *Barnett v. D.C. Dep't of Emp. Servs.*, 491 A.2d

1156, 1161 (D.C. 1985) (distinguishing between "failure to exhaust" and "examin[ation of] the claim's merits").

In their cursory argument to the contrary, the defendants cite a single case for their contention that a "dismissal . . . for failure to exhaust administrative remedies is a final judgment that triggers res judicata." Defs.' Suppl. Br. at 6 (quoting *Reynolds v. DOJ*, 10 F. Supp. 3d 134, 141 (D.D.C. 2014)). *Reynolds*, in turn, cites one other district court case, *McGee v. District of Columbia*, 646 F. Supp. 2d 115 (D.D.C. 2009)—which confined its holding to "right to sue" letters in the Title VII context. *Id.* at 123–24. And more importantly, a subsequent D.C. Circuit decision called *McGee*'s conclusion into doubt in line with the principles explained above. *See Murthy v. Vilsack*, 609 F.3d 460, 466 (D.C. Cir. 2010) (holding that "res judicata will not bar the filing of a new Title VII non-selection civil action after [a plaintiff] exhausts his EEOC remedies" because "fail[ure] to satisfy a precondition to suit . . . does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied." (quotation marks omitted)). Accordingly, the Court will proceed to consider Carter's claims.[1]

### B.   Statute of limitations (as to the individual defendants)

Next, the individual defendants move to dismiss the claims against them as time-barred. The parties agree that the applicable statute of limitations for § 1983 claims is three years. *See* Bailey, Friend, & Rouson Mem. in Supp. of Mot. to Dismiss at 4, Dkt. 16; Vaughn Mem. in Supp. of Mot. to Dismiss at 4, Dkt. 18; Pl.'s Suppl. Mem. in Opp'n to Def. Vaughn's Mot. to Dismiss at 1–2, Dkt. 21; *see also* D.C. Code § 12-301(8); *Proctor v. District of Columbia*, 74 F. Supp. 3d

---

[1] In contrast to Carter's D.C. law claims, "exhaustion of state administrative remedies [is] not . . . required as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982). Thus, the precondition on which his state law claim was dismissed is not at issue here.

436, 457 (D.D.C. 2014).  The limitations period begins to run "at the time the injury actually occurs."  *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994).  Here, "at the absolute latest, the plaintiff's claim accrued on the date of [his] termination."  *Proctor*, 74 F. Supp. 3d at 457 (quotation marks omitted).  Thus, as Carter agrees, *see* Pl.'s Suppl. Mem. at 2, the three-year clock began running when Carter was fired on June 13, 2019.  Because Carter filed his original complaint against the District of Columbia on June 12, 2022, *see* Compl. ¶ 1, his suit against the District was timely.

However, Carter did not name Bailey, Friend, Rouson, and Vaughn as defendants until he amended his complaint on September 30, 2022—more than three months later.  *See* Am. Compl. ¶ 1.  Thus, the claims against the individual defendants can be considered timely only if they "relate[] back" to the original pleading.  Fed. R. Civ. P. 15(c).  Under Rule 15(c)(1)(C), an amendment that "changes the party or the naming of the party against whom a claim is asserted," may relate back if, "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment" both (1) "received such notice of the action that it will not be prejudiced in defending on the merits" and (2) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  *Id.* 15(c)(1)(C).  Neither of these two requirements is satisfied here.

First, the individual defendants did not receive notice of the action during Rule 4(m)'s ninety-day period.  *See* Fed. R. Civ. P. 4(m).  The docket does not reflect any proof of formal service on the individual defendants at any point—of either the original or the amended complaint.  Nor does it show any other evidence of actual notice.  Carter also has not provided any evidence that the individual defendants received constructive notice of the action.  *See Patterson v. White*, 51 F.R.D. 175 (D.D.C. 1970) (explaining that the burden to show constructive notice rests on the

plaintiff). Carter's conclusory contention that "[i]t strains credulity to suppose that the individuals . . . would reasonably have had no idea from the original Complaint that his allegations concerned them," Pl.'s Opp'n to District and Individual Defs.' Mots. to Dismiss at 10, Dkt. 19, is not enough. To establish constructive notice, Carter must show that the defendants had "notice that litigation ha[d] been instituted" against them, not simply notice that an incident involving them occurred. *Hafferman v. Westinghouse Elec. Corp.*, 653 F. Supp. 423, 427 (D.D.C. 1986); *see also Philogene v. District of Columbia*, 864 F. Supp. 2d 127, 134 (D.D.C. 2012), *aff'd*, No. 12-7057, 2012 WL 6608966 (D.C. Cir. Dec. 10, 2012) (defendant mentioned in complaint, but not named as party, "had no reason to believe he would be named as a defendant"). Carter has failed to do so here.

Second, Carter has not shown that the individual defendants had knowledge that an action would be brought against them but for a mistake. "This Circuit reads the 'mistaken identity' requirement in a straightforward manner, and recognizes that Rule 15(c)(1)(C) is a name-correcting amendment that is intended to avoid the harsh consequences of a mistake." *Ferguson v. Loc. 689, Amalgamated Transit Union*, 626 F. Supp. 2d 55, 60 (D.D.C. 2009). Thus, defendants not named in the action "by the time the statute of limitations has run [are] entitled to repose" unless "it is or should be apparent" that they were left out simply due to "a mere slip of the pen." *Rendall-Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997). No slip of a pen occurred here. Rather, Carter "ma[de] a deliberate choice to sue *one* party"—the District of Columbia—and not the individual defendants. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010) (emphasis added). Such a choice "is the antithesis of making a mistake concerning the proper party's identity." *Id.*; *see also Nelson v. Adams USA, Inc.*, 529 U.S. 460, 467, n.1 (2000) ("Respondent Adams made no such mistake. It knew of Nelson's role and existence and, until it moved to amend its pleading, chose to assert its claim . . . only against [Nelson's company]."). Nothing in Carter's

8

initial complaint suggested that the individual defendants were intended parties.  Indeed, Carter has admitted that he sought to add the additional defendants only after learning that his original complaint against the District might suffer from "technical problems."  Pl.'s Opp'n at 11; *see Krupski*, 560 U.S. at 552 (discussing *Nelson*, 529 U.S. at 463–64).  "This evidence counter[s] any implication that [Carter] had originally failed to name [the individual defendants] because of any mistake concerning the proper party's identity."  *Krupski*, 560 U.S. at 552 (quotation marks omitted).

Because Carter's claims against the individual defendants are barred by the statute of limitations and cannot be saved by Rule 15(c)(1)(C)'s relation-back principle, they will be dismissed.[2]

### C.   Municipal liability under § 1983 (as to the District)

Remaining are Carter's § 1983 claims against the District of Columbia.  Under § 1983, the District cannot be held liable on a theory of respondeat superior "for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*  Carter attempts to satisfy this requirement by alleging that "the decision to fire him was taken at the policymaking level of the D.C. Courts, specifically by Dr. Bailey as executive officer and agency head."  Pl.'s Opp'n at 2.  But this argument fails for two reasons.

---

[2] Since the claims against the individual defendants are dismissed on statute of limitations grounds, the Court need not address the defendants' qualified immunity arguments.

First, the factual allegations in Carter's complaint establish that the decision to fire him was made by subordinates, not Bailey. Carter specifically alleges that Vaughn "recommend[ed] that [his] employment be terminated" in a memorandum to Friend; Friend "upheld that recommendation" in a memorandum to Rouson; "Rouson approved that recommendation"; and Friend then "conveyed to Mr. Carter . . . that he was being dismissed." Am. Compl. ¶ 151. In an apparent attempt to support municipal liability, Carter asserts, "[o]n information and belief," that "Rouson's approval memorandum was itself approved by Dr. Bailey, the D.C. Courts system's highest-ranking staff official." *Id.* ¶ 152. But "pleadings on information and belief require 'an allegation that the necessary information lies within the defendant's control, *and* that such allegations must also be accompanied by a *statement of the facts* upon which the allegations are based.'" *Flowers v. Exec. Off. of the President*, 142 F. Supp. 2d 38, 47 (D.D.C. 2001) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)) (emphasis in original). Carter has provided neither. His threadbare statement "summarily reiterat[ing] the elements of a claim of municipal liability under *Monell*"—that the decision was made by a final policymaker— is thus "legally insufficient to shield [his] claim from a motion to dismiss." *Philogene*, 864 F. Supp. 2d at 131; *see also Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

Second, even if Bailey did approve the decision to terminate Carter, her decision still would not support municipal liability here. "[T]o hold a municipality liable for an official's one-time action, the official must have final policymaking authority in the particular area, and the challenged action must have been taken pursuant to that authority." *Thompson v. District of Columbia*, 832 F.3d 339, 348 (D.C. Cir. 2016). "[W]hether a particular official has final policymaking authority is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (quotation

marks omitted). And under D.C. law, even if Bailey "had total discretion to hire and fire employees, [her] employment decisions are not imputable to the District if [s]he was not responsible for establishing [D.C. Courts'] employment policy." *Kidwell v. District of Columbia*, 670 A.2d 349, 352 (D.C. 1996); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.12 (1986) (explaining that decisions of a county official with "discretion to hire and fire employees without also being the county official responsible for establishing county employment policy . . . would not give rise to municipal liability").

Carter has not alleged any provision of D.C. law that gives the executive officer final authority over D.C. Courts' personnel decisions such as termination, much less over its employment policy as a whole. To the contrary, the D.C. Code appears to designate a different entity, the Joint Committee for Judicial Administration, as "the policy-making body for the District of Columbia Courts," including "general personnel policies." *Joint Committee*, D.C. Cts., https://www.dccourts.gov/about/joint-committee (last visited July 6, 2023);[3] *see* D.C. Code § 11-1701(b) ("The Joint Committee shall have responsibility within the District of Columbia court system for . . . [g]eneral personnel policies, including those for . . . removal[.]"). Further, the D.C. Code subjects the executive officer's individual personnel decisions to the Joint Committee's supervision and approval. *See* D.C. Code § 11-1703(a); *id.* § 11-1725(a); *Romansky v. Polansky*, 466 A.2d 1253, 1255 (D.C. 1983) (explaining that § 11-1725 "authoriz[es] . . . the Joint Committee

---

[3] The Court may take judicial notice of this source both because it is "information posted on [an] official public website[] of [a] government agenc[y]," *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014), and because Carter "incorporated [the source] by reference in the complaint," *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (quotation marks omitted); *see* Am. Compl. ¶ 5.

11

. . . to review the Executive Officer's appointments and terminations").[4]  And if the executive officer's personnel "decisions [are] reviewable by the city's 'authorized policymakers,'" she "is not the *final* policymaker" in this respect.  *Thompson*, 832 F.3d at 348 (quoting *Praprotnik*, 485 U.S. at 127).  Because Bailey was not D.C. Courts' policymaker on personnel decisions, her decision to approve Carter's termination would not subject the District to municipal liability.

To the extent Carter attempts to establish that Bailey "communicated" discriminatory beliefs to Vaughn, Friend, and Rouson and thus influenced their decision to terminate Carter, *see, e.g.*, Am. Compl. ¶¶ 96–98; Pl.'s Opp'n at 2, that claim would fail for the same reasons.  When an act "has not been formally approved by an appropriate decisionmaker," it "may fairly subject a municipality to liability" if it is the result of a "custom" in which "the relevant practice is so widespread as to have the force of law."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monnell*, 436 U.S. at 690–91).  Carter has not made any attempt to allege a widespread practice, and indeed, he explicitly disclaimed any reliance on custom as a basis for this claim.  *See* Pl.'s Opp'n at 7.  And as explained, even if Carter's allegations about Bailey's bias are true, Carter has not plausibly alleged that she was D.C. Courts' final policymaker on personnel matters such that those actions would subject the District to liability.  Thus, the claims against the District will be dismissed for failure to state claim of municipal liability under § 1983.

---

[4] Carter himself acknowledges that the Joint Committee administers D.C. Courts' personnel policies.  Am. Compl. ¶ 5 (citing *Human Resources*, D.C. Cts., https://www.dccourts.gov/about/learn-more/human-resources (last visited July 6, 2023)).  Although Carter later alleges that "[t]here was no one above [Bailey] and the only persons on a par with her were the *other members* of the [Joint Committee] as alleged above," *id.* ¶ 9 (emphasis added), that allegation is belied by Carter's own source.  *See Joint Committee*, *supra* (explaining that, "[p]ursuant to [statute], five judges serve on the Joint Committee," while the Executive Officer "implement[s]" the "general policies and directives of the Joint Committee" "*subject to the supervision* of the chief judges of the two courts" (emphasis added)).

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are granted. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

July 7, 2023